# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JACQUELINE, L.[1]**, | Case No. 3:18-cv-00715-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **NANCY A. BERRYHILL,** Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, | |
| Defendant. | |

Brian Scott Wayson, CASCADIA DISABILITY LAW, LLC, P.O. Box 12028, Portland, OR 97212. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Erin F. Highland, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family members.

**Michael H. Simon, District Judge.**

Jacqueline L. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33. For the following reasons, the Commissioner's decision is reversed and remanded.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff was born on August 27, 1966. AR 221. Plaintiff applied for Disability Insurance Benefits on December 29, 2013, AR 126, alleging a disability onset date of August 1, 2009. *Id.* As of the alleged disability onset date, Plaintiff was 42 years and 11 months old. *Id.* Plaintiff alleges that she is disabled due to high blood pressure, arthritis, edema in the lower extremities, bipolar disorder, PTSD from childhood trauma, and post-concussive syndrome resulting from a fall in 2009. *Id.* Disability Determination Services denied Plaintiff's claim on November 25, 2014 and denied her claim upon reconsideration on February 7, 2015. AR 10. Plaintiff appeared at a hearing held before Administrative Law Judge ("ALJ") Richard Geib on May 18, 2016. AR 75-77. A second hearing was held before the ALJ on February 14, 2017, but Plaintiff did not appear that hearing. The ALJ denied Plaintiff's claims on February 28, 2017. AR 7. On March 13, 2017, Plaintiff requested review of the ALJ's decision by the Appeals Council, which the Appeals Council denied. ECF 8. Plaintiff now seeks review in this Court.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2014. AR 13. At step one, the ALJ found that Plaintiff had not performed substantial gainful activity between the alleged onset date of August 1, 2009 and her last insured date of September 30, 2014. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: bilateral knee osteoarthritis status post total knee replacement, degenerative disc disease, obesity. *Id.* The ALJ also found that Plaintiff had the following mental impairments: PTSD, other specific anxiety disorder, unspecified neurocognitive disorder, and bipolar disorder. AR 13-14. At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the impairments listed in the regulations. AR 14-15.

The ALJ then determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitation:

> [Plaintiff] could frequently climb ramps and stairs, but never climb ladders, ropes, and scaffolds. She could never kneel. She could occasionally stoop crouch and crawl. She should have avoided even moderate exposure to work hazards. She could perform simple, routine tasks with occasional public and coworker contact (defined as interaction, and not relating to working in proximity to others).

AR 15.

At step four, the ALJ found that Plaintiff was unable to perform past relevant work as a clinical social worker and a university professor because those are skilled occupations, and Plaintiff was limited to unskilled work during the time period relevant to DIB calculation. AR 25. At step five, the ALJ identified three jobs in the national economy that Plaintiff could perform based on her age, education, work experience, and RFC. AR 25-27. The ALJ concluded that Plaintiff was not disabled between the alleged onset date of August 1, 2009 and the date last insured of September 30, 2014. AR 27.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) improperly rejecting subjective symptom testimony given by Plaintiff; (B) improperly rejecting the treating source opinions of Dr. Reams, Dr. Kuttner, and Dr. Lamprecht; (C) improperly rejecting lay witness source testimony given by Plaintiff's husband, Dr. John G.; and (D) improperly finding that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the impairments listed in the regulations.

### A. Rejection of Plaintiff's Subjective Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6. The ALJ is responsible for

determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The Ninth Circuit has consistently held that the ALJ must provide specific, clear and convincing reasons to reject a claimant's symptom testimony. *E.g.*, *Smolen v. Chater*, 80 F.3d 1273, 1280 (9th Cir. 1996).

"There is a two-step process for evaluating a claimant's testimony regarding the severity and limiting effect of the claimant's symptoms." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282. "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281).

It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46). The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not,

however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. The Ninth Circuit has stated that a claimant need not be "utterly incapacitated" in order to be eligible for benefits. *E.g.*, *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

At the first hearing, Plaintiff testified that she suffered a concussion after falling down at a movie theater in 2009, AR 84, and that this event triggered the onset of disability for her DIB application. AR 86-88. Plaintiff testified that the concussion put her into a state of "large cognitive decline." AR 92. The alleged after-effects of the concussion include general confusion, lack of focus, the inability to multi-task, the inability to filter out distracting noises, and a difficulty with remembering organizing words in the correct order. *Id.* At the hearing, Plaintiff agreed with a statement that she was "doing very well" in her work before she suffered the 2009 concussion; she emphasized, however, that she needed "an enormous amount of psychological support" even before the concussion. AR 94-95. Plaintiff also agreed that the concussion was the primary cause of her large cognitive decline.

> ALJ: [B]ut then you were able to [do work] and the only change is—is the concussion, right?
>
> Plaintiff: Yes.
>
> ALJ: That's what you're attributing everything to?
>
> Plaintiff: Yes.

AR 94.

After performing the two-step analysis, the ALJ found that (1) Plaintiff's medically determinable impairments could reasonably have been expected to cause some of the alleged symptoms, but (2) Plaintiff's statements about the intensity, persistence, and limiting effects of

those symptoms are not entirely consistent with medical evidence and other evidence in the record. AR 16-17. Accordingly, the ALJ gave little weight to Plaintiff's subjective testimony.

The ALJ assigned little weight to Plaintiff's testimony for the following reasons: (a) the testimony was inconsistent with a CT scan; (b) her testimony was inconsistent with a record statement about the duration of the recovery period following her concussion; (c) the ALJ was unconvinced by Plaintiff's testimony about difficulty with finding and organizing words; (d) the ALJ was unconvinced by Plaintiff's testimony about hypersensitivity to noise and competing stimuli; and (e) the ALJ was unconvinced by Plaintiff's testimony about her inability to sustain focus over the course of a 40-hour workweek. Plaintiff argues that the reasons given by the ALJ for rejecting Plaintiff's statements were insufficient and warrant remand.

### a. Inconsistency with Medical Evidence

The ALJ noted specific instances in the record in which Plaintiff's symptom testimony was inconsistent with medical evidence. Inconsistency with objective medical evidence can be a clear and convincing reason for an ALJ to reject a claimant's subjective testimony. *See Connet v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("[T]he ALJ's rejection of [claimant's testimony] regarding her limitations is based on clear and convincing reasons supported by specific facts in the record that demonstrate an objective basis for his finding."); *see Batson*, 359 F.3d at 1196 (9th Cir. 2004) ("Because the ALJ considered the claimant's testimony to be contradictory and unsupported by either the objective medical evidence or any persuasive reports of his doctors, the district court did not err in affirming the ALJ's determinations about [the claimant's] credibility.")

Later in the day when Plaintiff fell at the theater (July 19, 2009), she visited a hospital and received a cranial CT scan. AR 548. Dr. Richard Berkey recorded the findings of this CT scan: "Skull is intact. The brain appears normal. No intracranial hemorrhage or mass effect is

seen. " AR 585. In her own words, Plaintiff described the findings: "They didn't find any—
bleeds or anything like that. . . . [T]here was nothing that showed up you know huge growths on
imaging." AR 90-91. Plaintiff received another CT scan in August 2011—two years later—and
the results of that test were: "No evidence of acute hemorrhage [or] mass effect. . . . No acute
intracranial findings." AR 597. The ALJ properly found that Plaintiff's claims about cognitive
difficulties were, therefore, inconsistent with objective medical evidence, and this inconsistency
is a clear and convincing reason to assign little weight to Plaintiff's subjective symptom
testimony.

### b. Inconsistency with Record Statements about Recovery

Plaintiff suffered another fall in November 2011, and she reported having concussion-like
symptoms of disorientation, nausea, and increased fatigue. AR 497. Plaintiff's provider, C.
Thayer White, M.D., noted that Plaintiff "had a concussion 2 years ago much worse than this
with a very prolonged recovery." *Id.* The ALJ found that this statement conflicted with Plaintiff's
testimony that she never recovered from the fall in 2009. AR 18-19. The ALJ's finding of a
conflicting statement is rational, and where the evidence is susceptible to more than one rational
interpretation, the Commissioner's conclusion must be upheld. *Burch*, 400 F.3d at 679. (9th
Cir. 2005). The Court upholds the ALJ's finding of conflict, and it is a clear and convincing
reason for assigning little weight to Plaintiff's subjective testimony.

### c. Difficulty Remembering and Organizing Words

During her 2009 hospital visit, Plaintiff reported that she experienced difficulty with
remembering and organizing words. AR 544. "[H]owever, when her husband explain[ed] that
she was a social worker, is fluent in French, and taught mental status exams for 8 years, she
quickly correct[ed] him that it was 9 years." AR 544-45. Dr. Berkey reported that Plaintiff was
able to quickly tell him that her psychiatrist was out of town. AR 545. Dr. Berkey concluded that

although Plaintiff seemed "somewhat anxious . . . her mental status seem[ed] to be w/ clear and accurate thought processes." *Id.* Plaintiff was discharged in stable condition on the same day, AR 548, and Dr. Berkey did not diagnose Plaintiff with any brain injury or concussion. AR 549.

In July 2012, Plaintiff experienced a low-impact rear-end collision. AR 607. The ALJ pointed to the following post-accident exam results for being inconsistent with Plaintiff's symptom testimony:

> Neurological: She is alert and oriented to person, place, and time.
>
> Psychiatric: Her speech is normal and behavior is normal. . . .
> Cognition and memory are normal.

AR 609. Plaintiff's psychiatrist, Charles Kuttner, M.D., reported that Plaintiff was "shaky" on the day after the rear-end collision, but Dr. Kuttner found "[n]o indication of cognitive impairment." AR 710. This qualifies as substantial evidence to support the ALJ's rejection of Plaintiff's subjective symptom testimony.

The ALJ also noted a 2016 neuropsychological assessment as evidence that contradicts Plaintiff's testimony about difficulty remembering and organizing words. Scott Kaper, Ph.D., administered the 2016 assessment.[2] Dr. Kaper noted that Plaintiff's performance was "at the top .1 percentile in the Verbal Comprehension Scale." AR 1627, and that Plaintiff's "performance on the Verbal comprehension measures was in the superior range." AR 1623. To support Dr. Kaper's findings, the ALJ remarked that none of Plaintiff's medical providers observed Plaintiff experiencing any word-finding difficulties. AR 24. The ALJ also noted that

---

[2] Even though this assessment occurred after the date last insured of September 30, 2014, the ALJ ordered it to provide "a better understanding of the [Plaintiff's] cognitive functioning during the relevant time period, as [Plaintiff] alleges her cognitive problems became actively worse after a trip and fall in the summer of 2009, and the record contains no neurocognitive testing from the relevant time period." AR 16.

Plaintiff was "very articulate during her testimony at the [administrative] hearing and did not demonstrate any . . . word finding difficulties." AR 24. An ALJ's own observations may be used in the overall credibility evaluation of a claimant's statements. *See Orn v. Astrue,* 495 F.3d 625, 639-40 (9th Cir. 2007). After a review of the record, this Court finds that the ALJ properly rejected Plaintiff's subjective testimony about her difficulty with remembering and organizing words.

### d.  Hypersensitivity to Noise and Competing Stimuli

Plaintiff reported that, as a result of the 2009 concussion, she became hypersensitive to noises and other stimuli that compete for her attention. At the administrative hearing, Plaintiff said that she "just can't think and listen to typing at the same time." AR 95. Plaintiff further remarked that she would be unable to work in an environment with more than one person talking or more than one task demanding her attention at the same time. *Id.* Plaintiff argues that Dr. Kuttner has given evidence about this impairment by noting Plaintiff's tendency to dissociate during therapy sessions. AR 687; AR 710. Dr. Kuttner's treatment notes describe Plaintiff being startled twice by a neighboring door opening. AR 710. Both of these items of evidence support Plaintiff's assertions about her lack of focus and sensitivity to competing stimuli.

The ALJ noted, however, that in the 2016 assessment Dr. Kaper stated that Plaintiff's performance "actually improved" in the presence of competing stimuli. AR 1622. Dr. Kaper elaborated that Plaintiff "performed very well on the testing, even with my unintentional distractions." AR 1627. The 2016 assessment qualifies as substantial evidence to support the ALJ's rejection of Plaintiff's symptom testimony regarding hypersensitivity to competing stimuli.

### e. Inability to Sustain Focus During a 40 Hour Workweek

Plaintiff testified that she cannot sustain activity at work for prolonged periods of time. She expressed "deep sadness" about being able to work well for ninety minutes but that she is unable to sustain that activity for longer. AR 368. According to the ALJ "there is simply no objective evidence to support this allegation." AR 25. The ALJ cannot dismiss subjective symptom testimony because of a lack of support on the record. *Robbins*, 466 F.3d at 883.

The ALJ did note medical evidence that the ALJ viewed to be inconsistent with Plaintiff's statement. Dr. Kaper's assessment indicated that Plaintiff "appeared relatively fresh after the four hours of . . . assessment, staying a bit longer to talk about the results." AR 1627. Dr. Kaper's findings are qualified, however, insofar as he also noted that Plaintiff "appeared somewhat fatigued at the end of . . . 2.5 hours of testing, but stayed around for some feedback on the results, asking . . . some pointed questions during this time." AR 1625. The ALJ emphasized Dr. Kaper's characterization of Plaintiff being "relatively fresh" after four hours of assessment as evidence of Plaintiff's ability to "do an unskilled job on a full time basis." AR 22. The ALJ also noted that Plaintiff volunteered at her son's high school correcting AP papers, and that Plaintiff "was functioning cognitively at a level higher than most individuals." AR 25.

The Court finds that these references to the record does not qualify as substantial evidence to discredit the Plaintiff's testimony, because Plaintiff did not merely testify that she is unable to work for a four hour period, or even a single workday. Instead, Plaintiff testified that she cannot work a sustained forty-hour workweek. *See* AR 85 (Plaintiff: "I could not do . . . 40 hours a week period and wasn't trying to work 40 hours a week.") The ALJ did not explain how Plaintiff's ability to engage in part-time volunteer work or Plaintiff's cognitive function after four hours of testing addresses Plaintiff's testimony that she is unable to work forty hours over a period of five consecutive days. In this Court's view, the ability to perform part-time volunteer

work or to display high cognitive function for a discreet period of time are not clear and convincing reasons to reject Plaintiff's testimony that she did not have the ability to work forty hours per week. Plaintiff articulated her inability to sustain her volunteer duties for even 24 hours a week at a friend's classroom: "I can't do it. . . . I went home, collapsed, couldn't do anything else for three days afterward. I would have to escape the classroom and go to the women's room and cry because I—I just—I literally just froze." AR 87-88. Plaintiff's volunteer work or high cognitive function therefore do not qualify as substantial evidence to support the ALJ's finding that Plaintiff is able to work for a full workweek.

The Court upholds the ALJ's rejection of Plaintiff's testimony insofar as it pertains to her cognitive difficulties after the alleged concussion—specifically, Plaintiff's alleged difficulties with speech and with filtering out competing stimuli. The Court, however, remands the ALJ's decision insofar as it pertains to Plaintiff's inability to work for a sustained forty-hour workweek. The ALJ's RFC requires Plaintiff to work for forty hours per week, and Plaintiff has testified that she would be unable to do so. The ALJ has failed to provide a clear and convincing reason for dismissing Plaintiff's testimony about this particular impairment, and the ALJ must rectify this error upon remand. This error is not harmless because it is not "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

**B.      Rejection of Medical Source Testimony**

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The medical opinion of a treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

[the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to whether an examination has occurred; the nature and extent of the treatment relationship; supportability; consistency with the record; and specialization of the physician. 20 C.F.R. § 404.1527(c)(2)-(6).

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[T]he reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion.") "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43.

"However, '[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219,1228 (9th Cir. 2009) (alteration in original) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.2002)). "[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms . . . [and] with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in the workplace." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ assigned little weight to the medical opinions of Dr. Reams, Dr. Kuttner, and Dr. Lamprecht. For the following reasons, the Court finds that on remand, the ALJ must reevaluate the opinions of Dr. Reams and Dr. Lamprecht in a manner consistent with this opinion.

### 1. Redmond Reams, Ph.D.

Starting in 2011, Plaintiff attended either weekly or twice-weekly psychotherapy sessions with Dr. Reams. AR 1491. Dr. Reams focused on Plaintiff's primary mental health diagnosis of PTSD. *Id.* Dr. Reams submitted a report that Plaintiff's "impairment would substantially interfere with her ability to work on a regular and sustained basis." *Id.*. Dr. Reams noted that Plaintiff would be unable to work sustainably for more than two or three hours per day on no more than three days per week. AR 1491. The ALJ gave little weight to Dr. Reams' opinion.

### a. Consistency with Dr. Kaper's Examination

The ALJ found that Dr. Reams' opinion was inconsistent with Dr. Kaper's 2016 exam.[3]

Dr. Reams' opinion states that Plaintiff would be unable to "sustainably work more than 2-3 hours per day, three days per week" because of a "variety of factors" including "cognitive fatigue." AR 1491. Dr. Kaper's opinion found that after four hours, Plaintiff was able to ask pointed questions regarding her testing results and that Plaintiff did not appear to be unduly fatigued or cognitively incapacitated. AR 23. The two opinions, therefore, are contradictory. Because Dr. Reams' opinion was contradicted by another doctor's opinion, the ALJ needed only to provide specific and legitimate reasons that are supported by substantial evidence. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). The ALJ did so here, and the Court finds no error.

### b. Consistency with Plaintiff's Reported Symptoms of Bipolar Disorder

The ALJ found that Dr. Reams' opinion was inconsistent with Plaintiff's own report that "her bipolar disorder had been very well controlled." AR 23; AR 1618. Dr. Reams' opinion was focused, however, on Plaintiff's "primary mental health diagnosis" of PTSD. AR 1491. Therefore, Plaintiff's own testimony about bipolar disorder did not contradict Dr. Reams' opinion about Plaintiff's PTSD diagnosis and how that impairment would substantially interfere with Plaintiff's ability to work on a regular and sustained basis. Plaintiff's testimony about her

---

[3] Plaintiff argues that Dr. Kaper's opinion is of limited use because it was administered after Plaintiff's last insured date. The Court disagrees. The Commissioner may order a consultative examination—such as Dr. Kaper's exam—if there is difficulty in acquiring needed evidence from the treated sources alone. 20 C.F.R. §§ 404.1512(e), 416.912(e). Plaintiff herself testified about the ongoing nature of her impairments, and the Commissioner has acted properly by ordering a regulation-approved consultative exam. *See Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (stating that medical evaluations made after the expiration of a claimant's insured status can be relevant to an evaluation of the pre-expiration condition).

bipolar disorder was therefore not a specific and legitimate reason to reject Dr. Reams' opinion regarding Plaintiff's PTSD symptoms, and the ALJ must consider whether there were other reasons to give little weight to Dr. Reams' opinion regarding the the symptoms of that specific PTSD diagnosis upon remand.

### 2. Dr. Kuttner

Charles Kuttner, M.D., has been Plaintiff's treating psychiatrist since December 13, 2011. AR 1634. Dr. Kuttner submitted a medical opinion to the Commissioner on May 9, 2016: "My professional impression is that [Plaintiff] has bipolar disorder which was precipitated by severe childhood trauma; I believe she was functioning reasonably well until her neurological and emotional control were impaired by her concussion." AR 1608. Dr. Kuttner noted that Plaintiff often "presents as quite competent, but she is subject to deterioration either randomly or secondary to precipitants such as reminders of past trauma . . . generally presenting as extreme anxiety, insomnia, or irritability." AR 1608. Dr. Kuttner wrote that Plaintiff "would miss 1-2 weeks from work at least every 3 months due to periodic exacerbations of her symptoms." AR 1608. The ALJ gave little weight to Dr. Kuttner's opinion because it was inconsistent with Dr. Kaper's 2016 examination, inconsistent with Plaintiff's activities, and overly reliant on subjective statements by Plaintiff. The Court holds that Dr. Kuttner's opinion relied on Plaintiff's discredited subjective complaints, and therefore that the ALJ committed no error. *Bray*, 554 F.3d at 1228.

The ALJ noted that Dr. Kuttner's opinion relied on Plaintiff's subjective statements about her own symptoms even when those statements were not supported by Dr. Kuttner's own observations. AR 24. In a treatment note, Dr. Kuttner claimed that he has personally observed episodes of Plaintiff's confusion and "difficulty tracking." AR 1078. The ALJ found that Dr. Kuttner's treatments notes, however, contain observations of Plaintiff being "alert" or

"tracking well." AR 688, 696, 708, 712, & 713. Dr. Kuttner made repeated observations about Plaintiff's cognitive functioning being "intact." AR 1078, 1080, 1082, 1084, 1086, 1088. The ALJ relies on these observations to show that Dr. Kuttner's ultimate opinion was too reliant subjective statements. AR 24.

The ALJ is correct that Dr. Kuttner relied heavily on Plaintiff's subjective statements, even when those statements contradict his own firsthand observations. These are specific and legitimate reasons for assigning little weight to Dr. Kuttner's opinion, and they are supported by substantial evidence. As a result, the Court upholds the ALJ's giving of little weight to Dr. Kuttner's opinion.

### 3.  Derek Lamprecht, D.O.

In 2015, Derek Lamprecht, D.O., filled out paperwork to give Plaintiff a handicapped parking permit. AR 1577-78. Dr. Lamprecht initially approved of Plaintiff's temporary parking permit through June of 2015, and he later extended his approval until December of that year. *Id.* The ALJ gave little weight to Dr. Lamprecht's opinion because it "relates to the time period after the claimant's last date insured." AR 24.

The fact that an opinion was issued after the Plaintiff's last insured date is not, by itself, a valid reason for rejecting a medical opinion.[4] Evidence generated and obtained after the expiration of a claimant's insured status may demonstrate the severity of the claimant's impairments during the relevant period of time. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011). "[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." *Lester v. Chater*, 81

---

[4] The ALJ himself has relied heavily on Dr. Kaper's consultative examination, which also took place after Plaintiff's last insured date.

F.3d 821, 832 (9th Cir.1996) (quotation marks and citation omitted). The ALJ may not, therefore, refuse to consider evidence solely because it was created after the last insured date. *Basinger v. Heckler*, 725 F.2d 1166 (8th Cir. 1984). Upon remand, the ALJ must determine whether the Dr. Lamprecht's opinion is controlling, and if not the ALJ must evaluate that opinion by applying the factors from 20 C.F.R. § 404.1527(c)(2)-(6). This error is not harmless because it is not "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115.

## C. Rejection of Lay Witness Testimony

An individual who gives testimony about a claimant's impairments can qualify as a lay witness. SSR 06-03p, 2006 WL 2329939, at *2. Spouses and "other caregivers" can qualify as lay witnesses. *Id.* The ALJ's proffered reasons for rejecting lay witness testimony must be specific, as well as germane. *Bruce v. Astrue*, 557 F33d 1113, 1115 (9th Cir. 2009). "Inconsistency with medical evidence is one such [germane] reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). The Ninth Circuit has recognized a difference between (1) a lay witness statement that lacks affirmative support in the record, which is not necessarily a proper reason for rejecting testimony, and (2) a lay witness statement that is actually inconsistent with medical evidence in the record, which is a proper reason for rejecting testimony. *Compare Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) *with Bayliss*, 427 F.3d at 1218.

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Where an ALJ ignores uncontradicted lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The ALJ gave little weight to a statement from Plaintiff's husband, John G., Ph.D. AR 21-22. Dr. G. worked for over 19 years as "a Counseling Psychologist in the Vocational Rehabilitation Division of the Portland VA Medical Center." AR 99-100. In Dr. G.'s own words, his job is "to help disabled veterans get back . . . into work to the extent that they can." AR 100. Plaintiff argues that the ALJ erred by failing to consider Dr. G.'s professional credentials. Dr. G. has not seen Plaintiff in his professional capacity, however, so the ALJ has committed no error by disregarding Dr. G.'s credentials. *See* SSR 06-03p, *available at* 2006 WL 2329939, at *6.

The ALJ assigned little weight to Dr. G.'s testimony because of inconsistency with Dr. Kaper's exam and because of economic tension between Dr. G. and Plaintiff. The ALJ dismissed Dr. G.'s testimony in part because of "tension between the claimant and her husband concerning financial issues." AR 22. Dr. Reams' therapy notes contain examples of Plaintiff expressing worries about the negative impact of continued joblessness on her marriage. *See, e.g.,* AR 1038-39 ("[Plaintiff's] husband is grouchy . . . at her for her incapacity, and for being unpaid.") The ALJ has therefore provided a specific and germane reason for assigning little weight to Dr. G.'s testimony, and that reason is supported by substantial evidence. Therefore, the Court upholds the ALJ's decision to give little weight to Dr. G.'s testimony.

## D.  Step Three Analysis Finding 'No Disability'

At step three, the ALJ determines whether the impairment or combination of impairments meets or equals any of the specific impairments described in the regulations ("the Listings"), which are presumed to be disabling under the Social Security Act. At step three, the ALJ must evaluate a claimant's mental disorders by applying both the paragraph B criteria and the paragraph C criteria to those disorders.

"Paragraph B of each listing . . . provides the functional criteria we assess, in conjunction with a rating scale . . . to evaluate how your mental disorder limits your functioning."

12.00(A)(2)(b). The ALJ will evaluate the effect that a claimant's mental disorders has on the four different areas of mental functioning that are used in a workplace setting. *Id.* Those areas are: (1) understand, remember, and apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* The paragraph B criteria will be satisfied if the claimant's mental disorder results in one extreme limitation to any of those areas or in a marked limitation to any two areas of mental functioning. *Id.*

"Paragraph C of listings 12.02, 12.03, 12.04, 12.06, and 12.15 provides the criteria we use to evaluate 'serious and persistent mental disorders.'" 12.00(A)(2)(c). A claimant's mental disorder must be "serious and persistent" in order to satisfy the paragraph C criteria. *Id.* A mental disorder is serious and persistent if "there is a medically documented history of the existence of the disorder over a period of at least 2 years" and if there is evidence that satisfies both the C1 and C2 criteria listed in 12.00(G). *Id.*

At step three, the ALJ found that the severity of Plaintiff's mental impairments did not meet the criteria of Listings 12.02 ("Neurocognitive disorders"), 12.04 ("Depressive, bipolar and related disorders"), 12.06 ("Anxiety and obsessive-compulsive disorders"), or 12.15 ("Trauma- and stressor-related disorders"). AR 14. Plaintiff argues that the ALJ erred by being too cursory in his step three analysis.

The Court finds that the ALJ has provided substantial evidence to support his finding that the paragraph B criteria do not apply to Plaintiff's mental disorders. The ALJ provided examples from the record to support his finding that Plaintiff does not have either one extreme limitation or two marked limitations. The ALJ's proffered evidence is "more than a mere scintilla," and it therefore qualifies as substantial. *Bray*, 554 F.3d at 1222. The ALJ made no errors in his application of this evidence, so the Court upholds his findings about paragraph B.

Nor did the ALJ err by stating that "[t]he undersigned has also considered whether the 'paragraph C' criteria were satisfied. In this case, the evidence fails to establish the presence of the 'paragraph C' criteria." AR 15. As the Commissioner notes, an ALJ is not required to provide analysis under a particular heading; rather, the ALJ's decision may be viewed as a whole. *Lewis v. Apfel*, 236 F.3d 503, 513-14 (9th Cir. 2001); *Conley v. Berryhill*, No. 1:16-cv-944-GSA, 2017 WL 4310249, *8 (E.D. Cal. Sept. 28, 2017) (holding ALJ's error in failing to provide detailed examination of Listing 8.05 at step three was harmless because later evaluation of medical evidence was supported by substantial evidence). The ALJ sufficiently discussed and evaluated the medical evidence in in other portions of the opinion that allowed the conclusion that Plaintiff did not meet Listing 12.04(C), and therefore the ALJ was not cursory in his findings regarding paragraph C.

**E. Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings and whether the record is fully developed and free from conflicts and ambiguities. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

Although the Plaintiff has argued for a remand for benefits, the record here is not free of contradictions or ambiguities. Accordingly, this case is remanded for further proceedings consistent with this Opinion. The ALJ must properly evaluate Plaintiff's subjective testimony insofar as it pertains to Plaintiff's inability to work 40 hours a week, and the ALJ must properly evaluate the evidence from Dr. Reams and Dr. Lamprecht.

**CONCLUSION**

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND

REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 30th day of April, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge